## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**JOYCE WESTMORELAND**

**VERSUS**

**FIDELITY NATIONAL INDEMNITY
INSURANCE COMPANY and COLONIAL
CLAIMS CORPORATION**

**CIVIL ACTION**

**NO. 13-564-JWD-RLB**

## RULING & ORDER

Before the Court is the Partial Motion for Summary Judgment filed by Defendant, Wright National Flood Insurance Company f/k/a Fidelity National Indemnity Insurance Company ("Wright"). (Doc. 36). Plaintiff, Joyce Westmoreland ("Westmoreland"), opposes the motion (Doc. 42), and Defendant has filed a Reply Memorandum. (Doc. 45). The Court has carefully reviewed the submissions of the parties and the relevant law. For the reasons which follow, the motion is GRANTED in part and DENIED in part.

### I.  BACKGROUND FACTS

This action arises out of a flood insurance claim made by Plaintiff, Joyce Westmoreland, for damage to her property located at 20406 Fairway Drive, Springfield, Louisiana (hereinafter referred to as "the Property"), sustained during Hurricane Isaac on August 29, 2012. (Doc. 1). Westmoreland was the holder of Standard Flood Insurance Policy ("SFIP") No. 171150610986 which was issued by Wright,[1] a Write-Your-Own ("WYO") carrier participating in the National Flood Insurance Program. (Doc. 36-1, pp. 1, 4). The SFIP was effective from December 4, 2011,

---

[1] All references to transactions of Wright include both those transactions entered into by the insurer under its former name, Fidelity National Indemnity Insurance Company, and those entered into under its current name, Wright National Flood Insurance Company.

through December 4, 2012, and had a coverage limit for building structural damages in the amount of $200,000, subject to a deductible of $1,000. (*Id*. at p. 4).

At the outset, the Court notes that the parties are in agreement as to the majority of the material facts of the case. In September of 2008, the Property sustained flood damages when Hurricane Ike made landfall. (Doc. 36-1, pp. 3-4). The storm caused the Property to receive three inches of interior flood water and fifteen inches of exterior flood water. (*Id*. at p. 4). At the time of this flood loss, Carl Lind was the principal owner of the Property. (Doc. 36-2, p. 6). Mr. Lind was the named insured on SFIP No. 177700276306, which had been issued to him by Wright. (*Id*.). Mr. Lind made a flood loss claim through Wright and received payment under his SFIP in the amount of $21,151.81. (*Id*.).

In 2010, Westmoreland purchased the Property from the Linds. (Doc. 1, ¶ 10; *see also* Doc. 42-6, p. 6). On August 29, 2012, Hurricane Isaac made landfall and flooded Westmoreland's property. (Doc. 42, p. 2). After the storm, Plaintiff notified Defendant of the flood loss, and the claims adjustment process began. (Doc. 36-1, p. 4). Wright engaged independent adjuster, Bruce Huffman ("Huffman"), through Colonial Claims Corporation,[2] to adjust Plaintiff's claim. (*Id*.). Following an inspection of the Property, Huffman determined that the Property had received approximately twenty-two inches of water on the interior and thirty-two inches of water on the exterior of the building. (*Id*.). The interior flood waters remained inside the building for approximately five days. (Doc. 42, p. 3).

Huffman determined that all damages observed during his inspection were caused by flood. (Doc. 36-6, p. 1). However, Huffman indicated that some of the damage appeared to have been damage from a prior flood loss; therefore, evidence of the repair of the 2008 damages was

---

[2] In her Complaint, Plaintiff named Colonial Claims as a defendant. (Doc. 1).The Court dismissed Colonial Claims on April 3, 2014. (Doc. 26).

requested from Westmoreland. (Doc. 36-1, pp. 4-5). Because no evidence was provided to Huffman, his estimate included only those "items that were not paid in [the] prior [claim] or items I could tell by pictures and my inspection hat [sic] they had been repaired." (Doc. 36-6, p. 2). Huffman's estimate totaled $54,892.90 actual cash value. (Doc. 36-4, p. 18). Apparently based on this estimate, Wright issued a payment for structural damages in the amount of $54,892.90 to Westmoreland.[3] (Doc. 45, p. 5).

On December 20, 2012, Wright issued a Partial Denial of Claim letter to Westmoreland through her attorney. (Doc. 36-5, p. 3). Westmoreland appealed the denial to FEMA, but Wright's decision was upheld. (Doc. 36-7). Thus, on August 27, 2013, Westmoreland filed the instant suit in this Court. (Doc. 1).

## II. THE PRESENT MOTION

Wright moves for summary judgment on two separate issues. First, Wright contends that Westmoreland is not entitled to "recover for items of damage that were previously damaged by a prior flood loss, however, not repaired/replaced after the prior loss." (Doc. 36-1, p. 2). Specifically, Wright argues that Article VII(K)(2)(e) of the SFIP requires Westmoreland to produce evidence to show that any items damaged in a prior flood loss for which payment under the SFIP was issued were actually repaired before the current flood loss occurred. (*Id*. at p. 5).  In opposition, Westmoreland argues that she is entitled to recover all damages from the 2012 flood loss regardless of whether or not the prior damages were repaired. (Doc. 42, p. 8). Wright responds that based on the SFIP and provisions of FEMA's Adjuster Claims Manual, unrepaired prior damages cannot be paid a second time. (Doc. 45, p. 4). Therefore, Wright argues, it is entitled to summary judgment because Westmoreland cannot meet her burden of proving the repairs were made. (Doc. 45).

---

[3] It is unclear from the record when this payment was made.

Second, Wright asserts that because the Property was not Westmoreland's principal residence, any recovery allowed is subject to valuation by Actual Cash Value ("ACV") under Article VII(V) of the SFIP. (Doc. 36-1, p. 8). In her opposition, Westmoreland concedes that the Property was not her principal residence, and, therefore, her recovery is limited to the ACV. (Doc. 42, p. 10).

## III.   LAW & ANALYSIS

### A.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *See  Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587, 106 S.Ct. 1348 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (citations and internal quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable [fact-finder] drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir.1991).

### B. Interpretation of the SFIP

The flood insurance policy issued by Wright to Westmoreland was a SFIP administered pursuant to the National Flood Insurance Program ("NFIP"). Congress created the NFIP "to provide insurance coverage at or below actuarial rates." *Marseilles Homeowners Condo. Ass'n Inc. v. Fid. Nat. Ins. Co.*, 542 F.3d 1053, 1054 (5th Cir. 2008). The Federal Emergency Management Agency ("FEMA") operates the NFIP with claims ultimately being paid from the federal treasury. *Gowland v. Aetna,* 143 F.3d 951, 955 (5th Cir. 1998). FEMA regulations dictate the terms and conditions of the SFIP. *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 386 (5th Cir. 2005). Appendix A(1) to Title 44, Part 61 of the Code of Federal Regulations contains the language of the SFIP at issue here. 44 C.F.R. Pt. 61, App. A(1).

The SFIP and all disputes arising from claims under it are governed by FEMA flood insurance regulations and federal common law. 44 C.F.R. Pt. 61, App. A(1), Art. IX. Additionally, the scope of coverage under the SFIP is subject to interpretation by the Federal Insurance Administrator. 44 C.F.R. 61.4. And "FEMA's interpretation of its own regulations is given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.' " *Worthen v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 463 Fed. Appx. 422, 426 (5th Cir. 2012) (quoting *Stinson v. United States*, 508 U.S. 36, 45, 113 S. Ct. 1913 (1993) (internal citation and quotation omitted)). Because claims are paid from the federal treasury, the terms and conditions of the SFIP must be "strictly construed and enforced." *Gowland v. Aetna*, 143 F.3d 951, 954 (5th Cir. 1998).

While federal common law governs, the Fifth Circuit has applied "general principles of state insurance law" to aid in the interpretation of SFIPs. *Worthen*, 463 Fed. Appx. at 425. These principles include:

> (1) if the language of a policy is clear and unambiguous, it is accorded its natural meaning; (2) if the meaning of a policy provision is susceptible to different constructions, the one most favorable to the insured prevails; (3) insurance contracts are to be reasonably construed in accordance with the objective and intent of the parties; (4) in determining the most reasonable construction of contested provisions, the court may draw from the provisions, the policy as a whole, and the apparent objectives of the parties in entering the contract; and (5) in the end, if the meaning of the policy terms remains unclear, the policy is generally construed in the insured's favor to promote the policy's objective of providing coverage.

*Worthen*, 463 Fed. Appx. at 425-26 (citing *Hanover Bldg. Materials, Inc. v. Guiffrida*, 748 F.2d 1011, 1013 (5th Cir. 1984)).

### C. Summary Judgment on the Proof of Prior Flood Damage Repair Provision

Wright argues that Article VII(K)(2)(e) requires Westmoreland to show that the 2008 flood damages were repaired or replaced "before additional U.S. Treasury funds can again be paid out for the exact same damage." (Doc. 36-1, p. 5). In essence, Wright's argument stands for the proposition that the SFIP specifically excludes from coverage prior flood damages for which payment was made but which were not repaired.

The Court disagrees. Article VII(K)(2)(e) gives the insurer the option to "request, in writing, that [the insured] furnish [it] with a complete inventory of the lost, damaged or destroyed property, including … [e]vidence that prior flood damage has been repaired." 44 C.F.R. Pt. 61, App. (A)(1), art. VII(K)(2)(e). Even applying the required strict construction standards, the language of this provision does not indicate a coverage exclusion for prior unrepaired damages; it merely provides the insurer with the option to request evidence of repair. Simply put, there is nothing in Article VII or the SFIP as a whole indicating that evidence of the repair of prior damages is a predicate to recovery.

Wright also points to FEMA's Adjuster Claims Manual for support of its claim that unrepaired prior damages are excluded from coverage under the SFIP. Fed. Emergency Mgmt.

Agency, National Flood Insurance Program: Adjuster Claims Manual (2013).[4] Specifically, Wright notes that the Adjuster Claims Manual requires the adjuster to "exclude from adjustment any unrepaired prior damages" and to "[d]ocument that prior flood damage has been repaired in the event that the building sustained previous flood damage." *Id.* at II-5, VII-3. Wright argues that these requirements and the SFIP show that unrepaired prior damages are excluded from coverage. (Doc. 45, p. 4).

Again, the Court must disagree. The language of these provisions is clear and unambiguous – the *adjuster* must exclude unrepaired prior damages from the *adjustment*. The Adjuster Claims Manual provisions cited by Wright speak only to the standards which the adjuster must follow, not the scope of coverage under the SFIP.

Moreover, reading the provisions from the Adjuster Claims Manual *in pari materia* with Article VII(K)(2)(e) does not resolve the issue of whether or not the SFIP allows for coverage of prior unrepaired damages. As discussed above, Article VII(K)(2)(e) merely provides the insurer with the option to request evidence of repairs. If that evidence is available and provided, the adjuster can use it to fulfill his or her obligation to document the repairs.

The Court is further persuaded by the structure of the SFIP itself. Coverage exclusions are found in Articles IV and V of the SFIP. Under Article IV of the SFIP, certain types of property are specifically excluded from coverage including land, currency, and fences. *See* 44 C.F.R. Pt. 61, App. (A)(1), art. IV(6), (7), and (12). Article V sets forth specific coverage exclusions such as lost revenue and profits. 44 C.F.R. Pt 61, App. (A)(1), art. V(A)(1). Notably, neither Article IV nor Article V excludes from coverage unrepaired prior flood damages.

At bottom, Wright has not pointed to any cases, statutes, regulations, or FEMA interpretations which clarify whether or not the SFIP covers prior unrepaired damages. Thus, the

---

[4] *Available at* https://www.fema.gov/media-library/assets/documents/2675.

Court concludes that the SFIP is ambiguous as to its coverage of prior unrepaired damages; and, applying the standard principles of insurance policy interpretation, this ambiguity will be resolved in favor of the insured, Westmoreland. Accordingly, the Court finds that this issue is inappropriate for summary judgment; therefore, Wright's motion is denied.

### D. Summary Judgment on the Actual Cash Value Provision

Pursuant to Article VII(V)(4)(i), the actual cash value loss settlement applies to property that is "[a] dwelling that is not your principal residence." 44 C.F.R. Pt. 61, art. VII(V)(4)(i). As noted above, Westmoreland has conceded that the Property was not her principal residence, and her recovery is, therefore, limited to the actual cash value loss settlement provision. Article II(B)(2) defines actual cash value as "[t]he cost to replace an insured item of property at the time of the loss, *less the value of its physical depreciation*." 44 C.F.R. Pt. 61, art. II(B)(2) (emphasis added). Under the ACV provision, any recovery Westmoreland receives cannot include recovery for depreciation. Consequently, Wright's Partial Motion for Summary Judgment as to the ACV provision is granted, and Westmoreland's claim for recovery of depreciation is dismissed with prejudice.

### IV.   CONCLUSION

Accordingly,

**IT IS ORDERED** that the Partial Motion for Summary Judgment filed by Defendant, Wright National Flood Insurance Company f/k/a Fidelity National Indemnity Insurance Company, is **GRANTED IN PART**. Under the terms of the SFIP, the ACV Loss Settlement Provision applies to Plaintiff's claim because the Property is not her principal residence. Therefore, Defendant's Partial Motion for Summary Judgment seeking to dismiss Plaintiff's

claim for recoverable depreciation is **GRANTED**. Defendant's Partial Motion for Summary Judgment is in all other respects **DENIED**.

Signed in Baton Rouge, Louisiana, on <u>May 29, 2015</u>.


_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**