UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JOYCE WESTMORELAND

VERSUS

WRIGHT NATIONAL FLOOD
INSURANCE COMPANY (FKA
FIDELITY NATIONAL INDEMNITY
INSURANCE COMPANY) AND
COLONIAL CLAIMS CORPORATION

CIVIL ACTION NO. 3-13-CV-00564

3-13-CV-00564-JWD-RLB

## RULING ON MOTION FOR LEAVE TO FILE AMENDED WITNESS AND EXHIBIT LIST

Before the court is a Motion for Leave to File Amended Witness and Exhibit List by Wright National Flood Insurance Company FKA Fidelity National Indemnity Insurance Company ("Wright") (Doc.80). The motion is opposed (Doc. 84.) After considering the motion, attachments (Docs. 80-2 and 80-3) along with the memorandum opposed to the motion (Doc. 84) and reply memorandum (Doc.85) with attachments (Exhibits A-D), for the reasons which follow, the Court finds that the motion is meritorious and should be granted.

I. BACKGROUND FACTS

This action arises out of a flood insurance claim made by Plaintiff, Joyce Westmoreland, for damage to her property located at 20406 Fairway Drive, Springfield, Louisiana (hereinafter referred to as "the Property"), sustained during Hurricane Isaac on August 29, 2012. (Doc. 1). Westmoreland was the holder of Standard Flood Insurance Policy ("SFIP") No. 171150610986 which was issued by Wright,[1] a Write-Your-Own ("WYO") carrier participating in the National

---

[1] All references to transactions of Wright include both those transactions entered into by the insurer under its former name, Fidelity National Indemnity Insurance Company, and those entered into under its current name, Wright National Flood Insurance Company.

Flood Insurance Program. (Doc. 36-1, pp. 1, 4). The SFIP was effective from December 4, 2011, through December 4, 2012, and had a coverage limit for building structural damages in the amount of $200,000, subject to a deductible of $1,000. (Id. at p. 4).

At the outset, the Court notes that the parties are in agreement as to the majority of the material facts of the case. In September of 2008, the Property sustained flood damages when Hurricane Ike made landfall. (Doc. 36-1, pp. 3-4). The storm caused the Property to receive three inches of interior flood water and fifteen inches of exterior flood water. (Id. at p. 4). At the time of this flood loss, Carl Lind was the principal owner of the Property. (Doc. 36-2, p. 6). Mr. Lind was the named insured on SFIP No. 177700276306, which had been issued to him by Wright. (Id.). Mr. Lind made a flood loss claim through Wright and received payment under his SFIP in the amount of $21,151.81. (Id.).

In 2010, Westmoreland purchased the Property from the Linds. (Doc. 1, ¶ 10; see also Doc. 42-6, p. 6). On August 29, 2012, Hurricane Isaac made landfall and flooded Westmoreland's property. (Doc. 42, p. 2). After the storm, Plaintiff notified Defendant of the flood loss, and the claims adjustment process began. (Doc. 36-1, p. 4). Wright engaged independent adjuster, Bruce Huffman ("Huffman"), through Colonial Claims Corporation,[2] to adjust Plaintiff's claim. (Id.). Following an inspection of the Property, Huffman determined that the Property had received approximately twenty-two inches of water on the interior and thirty-two inches of water on the exterior of the building. (Id.). The interior flood waters remained inside the building for approximately five days. (Doc. 42, p. 3).

Huffman determined that all damages observed during his inspection were caused by flood. (Doc. 36-6, p. 1). However, Huffman indicated that some of the damage appeared to have

---

[2] In her Complaint, Plaintiff named Colonial Claims as a defendant. (Doc. 1). The Court dismissed Colonial Claims on April 3, 2014. (Doc. 26).

been damage from a prior flood loss; therefore, evidence of the repair of the 2008 damages was requested from Westmoreland. (Doc. 36-1, pp. 4-5). Because no evidence was provided to Huffman, his estimate included only those "items that were not paid in [the] prior [claim] or items I could tell by pictures and my inspection hat [sic] they had been repaired." (Doc. 36-6, p. 2). Huffman's estimate totaled $54,892.90 actual cash value. (Doc. 36-4, p. 18). Apparently based on this estimate, Wright issued a payment for structural damages in the amount of $54,892.90 to Westmoreland.3 (Doc. 45, p. 5).

On December 20, 2012, Wright issued a Partial Denial of Claim letter to Westmoreland through her attorney. (Doc. 36-5, p. 3). Westmoreland appealed the denial to FEMA, but Wright's decision was upheld. (Doc. 36-7). Thus, on August 27, 2013, Westmoreland filed the instant suit in this Court. (Doc. 1).

II.  **CONTENTIONS OF THE PARTIES**

In accordance with the Court's scheduling order, the parties filed the Pretrial Order on July 16, 2015. (Doc. 60.) Wright filed its final Witness and Exhibit Lists on August 10, 2015. (Docs. 66 and 68.) Plaintiff's Witness and Exhibit List (Doc. 69) was filed on the same day. Wright argues that after it submitted its witness and exhibit lists, Wright discovered that on August 3, 2015, Plaintiff listed the property at issue for sale through a real estate agent named Victoria Stanley. (Doc. 80, p.p. 1-2) Stanley is a real estate agent for Paige Knobles Property, LLC. (*Id.*) Wright argues that Stanley's testimony along with the file on the sale of the home will establish that Plaintiff made certain repairs of areas of the home damaged in the hurricane. Wright argues that this recently discovered information is relevant in the determination of the actual cash value of repairs which are covered under the policy.

Plaintiff argues, however, that this information is not relevant to the "only issue for this Court to determine," i.e. "the amount of covered losses that the Property sustained from hurricane Isaac." (Doc. 84.) Plaintiff therefore argues that the Court should deny Wright's motion.

### III. ANALYSIS

The parties vehemently disagree about the proper method for calculating losses covered under the policy. (*Cf.* Wright's Motion In Limine to Exclude Testimony regarding Plaintiffs RCV Estimates (Doc. 67), in which Wright argues that "RCV estimates do not assist the Court in the actual cost value of Plaintiff's alleged damages" (Doc. 67, p. 2.), with Plaintiff's opposition, which argues that replacement cost value (RCV) is "required and relevant" to a number of issues in the case. (Doc. 74, p. 1.) In the present motion, the parties vehemently disagree about whether evidence of actual cash value (ACV) is relevant to the issues in the case.

This case is set to be tried on January 16, 2016. The case will be tried to the bench with no jury. Proposed Findings of Fact and Conclusions of Law have been submitted by both sides (Docs. 63 and 71.) The Court has not yet ruled on the above referenced motion in limine nor has the Court decided at this time the proper method for calculating losses covered under the policy or the respective roles played by RCV and ACV in that determination. The Court notes, however, that in a November 20, 2014 memorandum by FEMA dealing in part with "actual cash value loss settlement," (Doc. 85, Exhibit D, p. 2.), it states "**If repairs have been completed,** it is the policyholder's responsibility to prove that the amounts paid on the claim plus the value of the deductible(s) and any applicable physical depreciation were spent to repair or replace covered flood damage. This only can be done by presenting receipts, paid bills, paid invoices and

canceled checks. The amount of the loss cannot be determined on an estimate that is not fully supported by the proof discussed above." (Emphasis in the original.)

Given the Court's discretion to allow an amendment to the Pretrial Order, and without ruling on the weight, if any, the Court will give to this testimony or evidence in resolving the issues in this case, the Court finds that this information is relevant.

IV. **CONCLUSION**

Given the foregoing, Wright's motion is GRANTED.

Signed in Baton Rouge, Louisiana, on November 17, 2015.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**